# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**J.A. FISCHER, D.C. KING, A.C. RUGH**
**Appellate Military Judges**

**UNITED STATES OF AMERICA**

v.

**PHILLIP L. ODOM**
**SERGEANT (E-5), U.S. MARINE CORPS**

**NMCCA 201500088**
**SPECIAL COURT-MARTIAL**

**Sentence Adjudged:** 24 November 2014.
**Military Judge:** Col D.J. Daugherty, UMSC.
**Convening Authority:** Commanding Officer, Headquarters and Service Battalion, Marine Corps Base, Camp Smedley D. Butler, Okinawa, Japan.
**Staff Judge Advocate's Recommendation:** LtCol P.S. Rubin, USMC.
**For Appellant:** LCDR Dillon Ambrose, JAGC, USN.
**For Appellee:** CAPT Diane L. Karr, JAGC, USN; LT James M. Belforti, JAGC, USN.

**31 August 2015**

---------------------------------------------------
## OPINION OF THE COURT
---------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

A military judge, sitting as a special court-martial, convicted the appellant, pursuant to his pleas, of one specification of conspiracy to commit assault consummated by battery and one specification of assault consummated by battery in violation of Articles 81 and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 881 and 928. The military judge sentenced

the appellant to confinement for a period of six months, reduction to pay grade E-1, and a bad-conduct discharge.  The convening authority (CA) approved the adjudged sentence and, pursuant to a pretrial agreement, suspended all confinement in excess of 30 days.

The appellant alleges two assignments of error (AOE): (1) that the CA's failure to address two closely-related cases during post-trial review prejudiced the appellant, and (2) that the appellant's sentence is disproportionately severe to that of his two co-conspirators.

After careful consideration of the record of trial, the parties' pleadings, and the AOEs, we conclude that the findings and the sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed.  Arts. 59(a) and 66(c), UCMJ.

## Background

For a time in late April and early May 2014, the Ocean Breeze enlisted club, Camp Foster, Okinawa, Japan, could best be described with the worst attributes of a Wild West saloon.  On 26 April 2014 Lance Corporal (LCpl) P assaulted Private First Class (PFC) S by punching him in the face as he was leaving the Ocean Breeze club.  At the same club a week later, PFC S and LCpl D met over drinks and despaired of the attack on PFC S.

LCpl D and PFC S were each military police and members of the Provost Marshall's Office (PMO), and they were increasingly incensed over LCpl P's assault on a PMO member.  Expressing qualms that counter-assaulting LCpl P may not be their best idea, LCpl D and PFC S solicited the advice of the appellant – also a military police and PMO member.  Despite being "the senior man on deck" and responsible for providing proper guidance to PFC S and LCpl D, the appellant agreed to assist in tracking down and confronting LCpl P.[1]  The three members then left the club for LCpl P's barracks room.

Using information he collected during the investigation into the earlier assault, the appellant led the three conspirators to LCpl P's room.  LCpl P awoke confused and, believing the conspirators to be his roommate, opened his room door for them.

---

[1] Record at 52, 93.

The appellant was first into the room, grabbing LCpl P from behind in a bear hug.  The appellant and LCpl P struggled, and appellant hit LCpl P in the back of the head to subdue him.  The fighters fell back onto the bed.  The appellant placed LCpl P into a "rear naked chokehold," a move that exposed the victim's body so that PFC S could strike him several times in his ribs.  As this occurred LCpl D stood by watching.[2]

The fight ended as quickly as it began.  The combatants disentangled themselves, apologizing to each other as other barracks residents arrived on scene.  The first responders included another sergeant (E-5) who arrived at the room exclaiming, "What's going on?  I heard noises.  I'm a sergeant."  To which the appellant replied, "I'm a sergeant too" as he left the room.[3]

Additional facts necessary for the resolution of the particular assignments of error are included below.

**Sentence Disparity**

The appellant argues that his sentence is disparately severe when compared to the sentences received by his co-conspirators, PFC S and LCpl D.  We disagree.

At a special court-martial the same military judge sentenced PFC S to a reprimand, confinement for 45 days, reduction to pay grade E-1, and forfeiture of $1,000.00 pay per month for two months for his role in the assault.  Pursuant to a pretrial agreement, the CA disapproved the reprimand and approved the rest of the adjudged sentence, suspending all confinement in excess of 30 days.  This was nearly the same agreement the CA had with appellant.

Subsequently, PFC S was processed for administrative separation.  While the CA recommended a discharge characterized as "Other-Than-Honorable," the separation authority, the CA's immediate superior in the chain-of-command, approved a characterization of "General but Under Honorable Conditions." PFC S's discharge was approved 11 March 2015.

LCpl D was convicted by a summary court-martial for similar offenses and was sentenced to restriction for 21 days, reduction to pay grade E-2, and forfeiture of $572.00 pay per

---

[2] Although it was alleged that LCpl D filmed the melee, the record is unclear as to whether this actually occurred.

[3] Record at 75.

3

month for one month.  In a supplemental action, the CA disapproved the finding of guilt for assault consummated by battery.  Subsequently, LCpl D was processed for administrative separation, but was retained in the service by approval of the separation authority on 1 June 2015.

The same CA convened and acted in all three courts-martial. As the CA prepared to act in the appellant's case, he was aware of and reflected on LCpl D's and PFC S's cases.

The appropriateness of a sentence generally should be determined without reference or comparison to sentences in other cases.  *United States v. Ballard*, 20 M.J. 282, 283 (C.M.A. 1985).  We are not required to engage in comparison of specific cases "'except in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases.'"  *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999) (quoting *Ballard*, 20 M.J. at 283).

"Closely related" cases are those that "involve offenses that are similar in both nature and seriousness or which arise from a common scheme or design."  *United States v. Kelly,* 40 M.J. 558, 570 (N.M.C.M.R. 1994)*; see also Lacy*, 50 M.J. at 288 (citing examples of closely related cases as including co-actors in a common crime, service members involved in a common or parallel scheme, or "some other direct nexus between the servicemembers whose sentences are sought to be compared").  The appellant bears the burden of demonstrating that any cited cases are "closely related" to his case and that the sentences are "highly disparate."  If the appellant meets that burden, then the Government must show that there is a rational basis for the disparity.  *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001)*; see also Lacy*, 50 M.J. at 288.  However, co-conspirators are not entitled to equal sentences.  *United States v. Durant*, 55 M.J. 258, 260 (C.A.A.F. 2001).

Without deciding whether the sentences in the three cases cited by the appellant are "highly disparate,"[4] we nonetheless find a rational basis for the disparity.  The appellant was by far the senior member of the conspiracy.  He led the other conspirators to the victim's room using information he collected in his official role.  He struck first, charging into the room ahead of LCpl D and PFC S to grab, punch and choke the victim.

---

[4] The Government concedes that the cases of PFC S and LCpl D are "closely related." Government's Brief of 15 Jul 2015 at 12.

LCpl D did not physically participate in the fight; while PFC S punched the victim only after the appellant restrained him with a "rear naked chokehold." Additionally, the appellant used his rank to aid his escape, telling the first responders "I'm a sergeant too" before leaving the scene.[5]

Given these significant distinctions, the Government has met its burden to demonstrate a rational basis for any sentence disparity.

## Failure to Address Companion Cases

The appellant alleges post-trial error in that the CA failed to consider the cases of the appellant's co-conspirators during the clemency process and note the companion cases in the promulgating order.

Section 0151a(5) of the Manual of the Judge Advocate General, Judge Advocate General Instruction 5800.7F (26 June 2012), directs CAs who order separate trials of companion cases to indicate such an order in the action on the record in each companion case. This court has held previously that this section is meant to provide guidance in preparation of the record of trial and does not create a substantive right for the appellant. *United States v. Bruce*, 60 M.J. 636, 642 (N.M.Ct.Crim.App. 2004). Even if the section created a substantive right, we find no prejudice under circumstances in which this CA was aware of and considered the companion cases prior to acting in the appellant's case.[6] *United States v. Wheelus*, 49 M.J. 283, 288 (C.A.A.F. 1998).

Nonetheless, the appellant is entitled to accurate court-martial records. *United States v. Crumpley*, 49 M.J. 538, 539 (N.M.Ct.Crim.App. 1998). Accordingly, we order the necessary corrective action in our decretal paragraph.

---

[5] Record at 75.

[6] The appellant asserts that the CA is currently under the misapprehension that PFC S received a discharge characterized as "Other-Than-Honorable." Appellant's Reply Brief of 21 Jul 2015 at 4. However, the separation authority's final approval of PFC S's discharge was made on 11 March 2015 after the CA issued the promulgating order in this case on 2 March 2015. As a result, the CA's current misapprehension is immaterial to what he considered at the time of post-trial review.

## Conclusion

The findings and the sentence as approved by the CA are affirmed.  The supplemental CMO shall correctly reflect the two companion cases of LCpl D and PFC S.

For the Court

R.H. TROIDL
Clerk of Court