*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps Court of Criminal Appeals

Before
KING, TANG, and LAWRENCE,
Appellate Military Judges

———————————————

**UNITED STATES**
Appellee

**v.**

**Michael C. ANNE**
Corporal (E-4), U.S. Marine Corps
Appellant

**No. 201900072**

Decided: 18 December 2019.

Appeal from the United States Navy-Marine Corps Trial Judiciary Military Judge: Lieutenant Colonel Keaton H. Harrell, USMC. Sentence adjudged 22 August 2018 by a general court-martial convened at Camp Lejeune, North Carolina, consisting of a military judge sitting alone. Sentence awarded by the military judge: reduction to E-1, a fine of $4,000.00, confinement for 28 months, and a dishonorable discharge.[1]

For Appellant: Major Matthew A. Blackwood, USMC.

For Appellee: Lieutenant Joshua C. Fiveson, JAGC, USN.

———————————————

---

[1] The Convening Authority approved the adjudged sentence but suspended confinement in excess of 24 months pursuant to a pretrial agreement.

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

————————————————

PER CURIAM:

A military judge sitting as a general court-martial convicted Appellant, consistent with his pleas, of three specifications of conspiracy, two specifications of larceny of military property, two specifications of wrongful sale of military property, attempted wrongful sale of military property, dereliction of duty, and obstruction of justice, in violation of Articles 80, 81, 92, 108, 121, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 880, 881, 892, 908, 921, and 934 (2016).

Appellant claims that he received a highly disparate sentence compared to that of his co-conspirator, Lance Corporal (LCpl) (E-3) Delnevo. We disagree, find no prejudicial error, and affirm.

## I. BACKGROUND

While serving as a supply Marine for 3d Marine Raider Battalion, and over the course of three years (2016-2018), Appellant engaged in a campaign to steal and sell or attempt to steal and sell to a local pawn shop military property valued in the hundreds of thousands of dollars. As part of this campaign, he approached LCpl Delnevo, a junior Marine with whom he worked, with the idea of selling stolen property, including 25 Solar Portable Alternative Communications Energy Systems. Also stolen were Leatherman multi-tools, Gerber S39V knives, Surefire flashlights, scout lights, Hellfighter lights and helmet lights, and Recon Sleeping Systems. Finally, when the command became suspicious, Appellant conspired with LCpl Delnevo to destroy evidence of their activities by replacing the hard drive for the warehouse security camera. LCpl Delnevo then drove Appellant to a store at which Appellant purchased a new hard drive and then replaced the original hard drive with the newly purchased drive. Appellant then destroyed the original. Pleading guilty to ten related specifications, Appellant faced a total of 70 years and six months confinement. LCpl Delnevo pleaded guilty at a separate general court martial to the conspiracies, larcenies of military property (including larcenies that did not involve Appellant), attempted sale of military property, and dereliction of duty. LCpl Delnevo did not plead guilty to obstruction of justice or the separate charge of attempting to sell military property. Pleading guilty to nine related specifications, LCpl Delnevo faced a total of 70 years and six months of confinement. LCpl Delnevo's military judge sentenced him to re-

duction to E-1, confinement for 20 months, and a dishonorable discharge. The convening authority approved the sentence as adjudged.

The same trial counsel represented the government at both courts-martial and the same convening authority acted on both sentences. Different military judges presided over and sentenced the two Marines. Finally, while Appellant's sentencing hearing is part of the record, the record does not contain the evidence in aggravation, extenuation, or mitigation offered at LCpl Delnevo's sentencing proceedings. Additional facts necessary to the resolution of the issue are discussed *infra.*

## II. DISCUSSION

The appellant now contends his sentence is highly disparate to that of LCpl Delnevo and that this Court should remedy that disparity by affirming a sentence of no more than 20 months' confinement, reduction to paygrade E-1, and a dishonorable discharge. The Government concedes the cases are "closely related," but argues they are not "highly disparate," or if they are, that a "rational basis" exists for said disparity.

We review sentence appropriateness de novo, *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006), and generally without reference or comparison to sentences in other cases. *United States v. Ballard*, 20 M.J. 282, 283 (C.M.A. 1985). We will engage in sentence comparison only "in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases." *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (quoting *Ballard*, 20 M.J. at 283).

When arguing for relief based on sentence disparity, an appellant must demonstrate "that any cited cases are 'closely related' to his or her case and that the sentences are 'highly disparate.' If the appellant meets that burden . . . then the Government must show that there is a rational basis for the disparity." *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999). "Closely related" cases involve "offenses that are similar in both nature and seriousness or which arise from a common scheme or design." *United States v. Kelly,* 40 M.J. 558, 570 (N.M.C.M.R. 1994)*; see also, Lacy*, 50 M.J. at 288.

In assessing whether sentences are highly disparate, adjudged sentences are used because there are several intervening and independent factors between trial and appeal—including discretionary grants of clemency and limits from pretrial agreements—that might properly create the disparity in what are otherwise closely related cases. *United States v. Roach*, 69 M.J. 17, 21 (C.A.A.F. 2010). Moreover, we are "not limited to a narrow comparison of the relative numerical values of the sentences at issue," but may also consider "the disparity in relation to the potential maximum punishment." *Lacy*, 50

3

M.J. at 287. Finally, co-conspirators are not entitled to similar sentences and disparity between them does not necessarily render one sentence inappropriate, "provided each military accused is sentenced as an individual." *United States v. Durant*, 55 M.J. 258, 261 (C.A.A.F. 2001) (citations omitted). This is so because the point of examining disparate sentences is not only to eliminate actual unfairness or injustice, but to ensure the "appearance of fairness and integrity, without which the public, members of Congress, and service personnel will lose confidence in the military justice system." *United States v. Kelly*, 40 M.J. 558, 570 (N-M Ct. Crim. App. 1994). The United States concedes that these cases are closely related for purpose of this appeal. We concur and so begin with the next prong—whether the sentences are highly disparate.

We begin with the established principle that "sentence comparison does not require sentence equation," *Durant,* 55 M.J. at 260, as the goal is to "attain relative uniformity rather than arithmetically averaged sentences." *Id.* Here, two supply Marines engaged in largely the same course of misconduct over several months, namely, stealing or attempting to steal from the warehouse in which they were entrusted to work, hundreds of thousands of dollars of government property, selling some of that property to enrich themselves, and then conspiring to obstruct justice. Considering that each Marine faced decades of confinement, we do not find a difference of eight months of confinement to be highly disparate. Nor do we perceive such a small delta indicative of unfairness or that it risks such a perception.

Regarding the fine, the record indicates the appellant was paid at least $3000 for his criminal activity. At trial, the Government requested a sentence that included a fine of $5000. The Defense objected to that amount, requesting instead a "fair fine."[2] While we know he was enriched,[3] the record before us does not indicate the amount LCpl Delnevo was paid beyond approximately $1800.00. Without this information, we decline to assume Appellant's fine resulted in a "highly" disparate sentence.

Even had Appellant satisfied his burden, we would find a rational basis for the disparity. First, Appellant was a non-commissioned officer engaging in criminal activity with a junior Marine. We have routinely recognized the

---

[2] R. at 45.

[3] *See* Prosecution Exhibit 1, at 2: "Lance Corporal Delnevo and I split the $2600 and we each received $1300."

military maxim that with greater authority goes greater responsibility and, thus, accountability, especially when the senior encourages or engages in misconduct with subordinates. *See e.g.*, *United States v. Flowers*, 2017 CCA LEXIS 712 (N-M Ct. Crim. App. 21 Nov. 2017) (unpub. op.) (considering seniority of appellant as a senior, non-commissioned officer in determining rational basis for sentence disparity); *United States v. Lambert*, 2006 CCA LEXIS 300 at * 14 (N-M Ct. Crim. App. 27 Nov. 2006) (unpub. op.) ("as the senior NCO, [co-conspirator] was invested with greater responsibility and authority.") So too here. Not only did Appellant raise with his junior the idea of selling stolen military property, he informed that junior Marine that a security camera may have recorded their crimes and subsequently entered into a second conspiracy with that junior Marine to obstruct justice—a conspiracy that culminated with Appellant alone buying a new hard drive, replacing the old one, and destroying the original hard drive. We concur with the Government that such a brazen attempt to obstruct justice increases Appellant's level of culpability and provides a rational basis for the difference in Appellant's sentence.

## III. CONCLUSION

Having carefully considered Appellant's assigned error, the record of trial, and the parties' submissions, we conclude the findings and sentence are correct in law and fact and that no error materially prejudiced Appellant's substantial rights. Arts. 59, 66, UCMJ.

Although not raised by Appellant, we note that the court-martial order (CMO) does not accurately reflect the disposition of all charges and specifications to which Appellant entered pleas of not guilty. The CMO indicates that Charge I, Specification 2, Charge II, Specification 2, Charge III, and Specification 3 were dismissed without prejudice. However, the CMO fails to indicate that the withdrawn charges and specifications were also "dismissed by the convening authority without prejudice to ripen into prejudice upon completion of appellate review in which the findings and sentence have been upheld."[4] The appellant is entitled to have court-martial records that correctly reflect the content of his proceeding. *United States v. Crumpley*, 49 M.J. 538, 539 (N-M. Ct. Crim. App. 1998). Accordingly, the supplemental CMO shall properly reflect the disposition of Charge I, Specification 2, Charge II, Specification 2, Charge III, and Specification 3, as reflected above.

---

[4] Appellate Exhibit I at 6, Record at 108.

Accordingly, the findings and sentence as approved by the Convening Authority are **AFFIRMED**.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court