*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

_____

Before
MONAHAN, STEPHENS, and DEERWESTER
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Brandon FUSTER**
Lance Corporal (E-3), U.S. Marine Corps
*Appellant*

**No. 202000230**

Decided: 29 September 2021

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
K. Scott Woodard

Sentence adjudged 24 June 2020 by a special court-martial convened at Marine Corps Base Camp Lejeune, North Carolina, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: reduction to E-1, confinement for four months, and a bad-conduct discharge.

For Appellant:
*Lieutenant Commander Erin L. Alexander, JAGC, USN*

For Appellee:
*Commander Kevin D. Shea, JAGC, USN*
*Commander James M. Toohey, JAGC, USN*
*Lieutenant Commander Jeffrey S. Marden, JAGC, USN*

Senior Judge STEPHENS delivered the opinion of the Court, in which Chief Judge MONAHAN and Judge DEERWESTER joined.

———————————————

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under
NMCCA Rule of Appellate Procedure 30.2.**

———————————————

STEPHENS, Senior Judge:

Appellant was convicted, pursuant to his pleas, of one specification each of conspiracy, violating a lawful general order, assault consummated by battery, and unauthorized entry, in violation of Articles 81, 92, 128, and 129, Uniform Code of Military Justice [UCMJ].[1] The charges stemmed from an incident where Appellant and two other Marines accosted a junior Marine, forced him to drink alcohol and perform exercises, and physically assaulted him.

Appellant's sole assignment of error is that his term of confinement and punitive discharge are inappropriately severe, particularly when compared to the sentences of the other two culpable Marines. The other Marines each received less confinement than Appellant and they did not receive punitive discharges, despite engaging in similar misconduct. We disagree and find no prejudicial error and affirm.

## I. BACKGROUND

One evening in September of 2019, Appellant joined Lance Corporal (E-3) [LCpl] Hotel[2] and LCpl Charlie at their barracks room, where they had been playing video games and had each already consumed several beers. After about ten minutes, the three Marines decided to go to Private First Class (E-2) [PFC] Vance's room to force him to drink. When PFC Vance opened the door, LCpl Hotel gave PFC Vance a beer and told him to "chug it."[3] Appellant

———————————————

[1] 10 U.S.C. § 881, 892, 928, 929.

[2] All names used in this opinion, except those of the judges, appellate counsel, and Appellant are pseudonyms.

[3] Pros. Ex. 1 at 3.

encouraged this by yelling phrases at PFC Vance such as "drink b[***]," or words to that effect. [4]

At some point Appellant, LCpl Hotel, and LCpl Charlie left PFC Vance's room. But when they returned, their knocks went unanswered. LCpl Hotel retrieved a master key to the barracks and opened the door. All three Marines entered PFC Vance's room uninvited.

After making PFC Vance drink in his room, LCpl Hotel, LCpl Charlie and Appellant brought him outside and made him run to the adjacent parking lot, where they continued to accost him. This included forcing PFC Vance to perform push-ups, sit-ups, and planks, all while simultaneously yelling at him to keep drinking beer and hard liquor. At some point, LCpl Hotel kicked PFC Vance in the stomach and ribs. PFC Vance, who later estimated he drank about a half bottle of liquor and at least 10 beers,[5] began vomiting. When he attempted to stand up and yell at LCpl Hotel in protest, Appellant grabbed PFC Vance from behind in a chokehold. Appellant used his own leg to sweep PFC Vance's left leg and slammed him back down to the ground. LCpl Hotel, LCpl Charlie, and Appellant then made him run back to the barracks and crawl up the staircase on his hands and knees. Once back in PFC Vance's room, they pushed him into the shower and LCpl Hotel sprayed him with shaving cream and Windex cleaner.

Appellant eventually pleaded guilty. During the providency inquiry, Appellant acknowledged he was the most sober participant, having only consumed approximately three beers that evening. Appellant's plea agreement placed no limitation on punitive discharges and capped the maximum amount of confinement at four months.

LCpl Hotel and LCpl Charlie's records of trial are not part of Appellant's record of trial, and their courts-martial did not satisfy the jurisdictional requirement for review by this Court under Article 66(b), UCMJ.[6] But the Convening Authority's Action in Appellant's record of trial listed LCpl Hotel and LCpl Charlie's cases as companion cases. LCpl Hotel pleaded guilty at special court-martial of one specification each of violating Articles 81, 92, 115, 128, and 129, UCMJ, and was sentenced to 80 days' confinement, forfeiture of $1,155 pay per month for three months and reduction in rank to E-1. He did not receive a punitive discharge. LCpl Charlie pleaded guilty at summary

---

[4] *Id.*

[5] Pros. Ex. 2 at 5.

[6] 10 U.S.C. § 866(b).

court-martial to one specification each of violating Articles 81 and 92, UCMJ. He was sentenced to reduction in rank to E-2, forfeitures of $1,295 pay per month for one month, and 60 days' restriction.[7]

## II. DISCUSSION

We review sentence appropriateness de novo.[8] This Court, like our sister service courts of criminal appeals, have long been disinclined to compare individual sentences. "Accused persons are not robots to be sentenced by fixed formulae but rather, they are offenders who should be given individualized consideration on punishment."[9] Indeed, "sentence appropriateness should be determined without reference to or comparison with the sentences received by other offenders."[10] This even applies to the sentencing of codefendants, where "the military system must be prepared to accept some disparity . . . provided each military accused is sentenced as an individual."[11] Appellate courts only make such comparisons "in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases."[12]

In *United States v. Lacy*,[13] the Court of Appeals for the Armed Forces [CAAF] laid out a three-part test for determining sentence appropriateness in light of claims of disparate treatment. This test asks: (1) whether the cases are closely related; (2) whether the cases resulted in highly disparate sentences; (3) and if it did result in highly disparate sentences, whether there was a rational basis for that difference.[14] If an appellant meets his burden of

---

[7] As the Government points out in its Motion to Attach, the Convening Authority's Action erroneously stated that LCpl Charlie was sentenced to 90 days' confinement and forfeiture of $1,041 pay per month for a period of three months. Under Rules for Court-Martial 1301(d)(1), a summary court-martial may not, among other things, adjudge more than one month of confinement or forfeitures of more than two-thirds of one month's pay. We address this error in our decretal paragraph.

[8] *United States v. Lane*, 64 M.J. 1, 4 (C.A.A.F. 2006).

[9] *United States v. Mamaluy*, 10 C.M.A. 102, 106, 27 C.M.R. 176, 180 (1959).

[10] *United States v. Ballard*, 20 M.J. 282, 283 (C.A.A.F. 1985) (internal citations omitted).

[11] *United States v. Durant*, 55 M.J. 258, 261 (C.A.A.F. 2001).

[12] *Ballard*, 20 M.J. at 283.

[13] 50 M.J. 286 (C.A.A.F. 1999).

[14] *Id.* at 288.

showing the first two prongs, the burden shifts to the Government to show the rational basis for the difference.[15]

There is no question Appellant's case satisfies the first prong. He, LCpl Hotel, and LCpl Charlie were all co-actors in the same event, collectively mistreating PFC Vance. But whether or not Appellant's sentence qualifies as highly disparate from that of his co-actors is questionable. It is true Appellant's sentence of four months' confinement and a bad-conduct discharge was more severe than LCpl Hotel's punishment [80 days' confinement and no punitive discharge] and LCpl Charlie's punishment [summary court-martial and no confinement]. However, "the test [for highly disparate sentences] is not limited to a narrow comparison of the relative numerical values of the sentences at issue, but also may include consideration of the disparity in relation to the potential maximum punishment."[16] LCpl Hotel—who had almost identical charges as Appellant—faced the same maximum possible punishment as Appellant under the jurisdictional maximum of the special court-martial.

Assuming arguendo Appellant's sentence was highly disparate from that of his co-actors, and therefore meets the second prong of the *Lacy* test, the record still shows a rational basis for the difference. In *United States v. Durant*, the sentence disparity between defendants was much greater, and yet CAAF still found no abuse of discretion or obvious miscarriage of justice because there was a rational basis for the difference.[17] In *Durant*, the appellant received a dishonorable discharge and confinement for 30 months, though his co-conspirator received neither confinement nor a punitive discharge.[18] Unlike the appellant in *Durant* who chose to be sentenced by a military judge alone, the co-conspirator chose to request sentencing by officer and enlisted members. In finding a rational basis for the difference, CAAF contrasted the appellant's character evidence with that of his co-conspirator's. While the appellant's witnesses were "lukewarm in their assessment of the appellant's future potential," the coconspirator presented glowing witness testimony in extenuation and mitigation, as well as having his wife beg the members to keep her husband out of confinement.[19]

---

[15] *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2000).

[16] *Lacy*, 50 M.J. at 289.

[17] 55 M.J. at 263.

[18] *Id.* at 259.

[19] *Id.* at 262.

Much like the appellant in *Durant,* there are specific factors that provide a rational basis for why Appellant may have received a greater sentence than his peers. Most notably, out of the three culpable Marines, Appellant admitted to being "the most sober one there,"[20] having only consumed approximately three beers over the course of the evening. While LCpl Hotel and LCpl Charlie's intoxication levels do not excuse their misconduct, it is reasonable to conclude that Appellant's relative sobriety made his actions all the more egregious. When PFC Vance attempted to resist his tormentors by literally standing up to them, Appellant physically forced PFC Vance back to the ground by holding him from the rear and sweeping his leg. Additionally, LCpl Charlie was also only convicted of violating Articles 81 and 92, and was not charged with additional violations of Articles 128 and 129—both faced by Appellant and LCpl Hotel.

It should also be noted Appellant knowingly and voluntarily entered into a plea agreement that capped confinement to a maximum of four months and that explicitly permitted a bad-conduct discharge. Like the appellant in *Durant*, Appellant's sentence, and its disparity with that of his co-actors, is partially the result of his own choices. Although Appellant did not "beat" his deal, he did receive a sentence that was legally permitted by it. He received the benefit of his bargain. Additionally, while we do not have LCpl Hotel and LCpl Charlie's character evidence before us, it can be said that Appellant's own evidence was middling. The only written defense exhibit that Appellant submitted was his Record of Service, which was otherwise unremarkable. For these reasons, we find there was a rational basis for the difference between Appellant's sentence and that of his co-actors and we do not find it to be inappropriately severe.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[21]

As noted earlier, the Convening Authority's Action incorrectly summarized LCpl Charlie's adjudged punishment. Although we find no prejudice from this scrivener's error, Appellant is entitled to have court-martial records

---

[20] R. at 43.

[21] Articles 59 & 66, UCMJ.

that correctly reflect the content of his proceeding.[22] Accordingly, we direct that a corrected supplemental Convening Authority's Action be issued.

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court

---

[22] *United States v. Crumpley*, 49 M.J. 538, 539 (N-M. Ct. Crim. App. 1998).